```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF INDIANA
           SOUTH BEND DIVISION
```

| | | |
|---|---|---|
| UNIVERSITY OF NOTRE DAME DU LAC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. 3:12-CV-418 |
| ENGLISH BOILER & TUBE, INC., | ) ) ) | |
| Defendant. | ) ) | |

## **OPINION AND ORDER**

This matter is before the Court on English Boiler & Tube, Inc.'s Motion for Summary Judgment, filed on October 17, 2013. For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

The University of Notre Dame Du Lac ("Notre Dame") initially brought a breach of contract action against English Boiler & Tube, Inc. ("English Boiler") in the Circuit Court of St. Joseph's County, Indiana, arising out of a contract related to a construction project on Notre Dame's campus. The case was then removed here. English Boiler has filed the instant motion for summary judgment, asserting there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.

-1-

DISCUSSION

Summary judgment standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*,

621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). While a non-moving party's failure to respond to summary judgment does not automatically result in judgment for the movant, a court may deem the facts in the moving party's statement of uncontested facts as admitted to the extent the facts are supported by evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

Facts

On or around February 7, 2005, Notre Dame and English Boiler entered into an agreement entitled *Lump Sum General Bid Contract Between The University of Notre Dame and English Boiler and Tube, Inc. for Packaged Steam Boiler No. 6 Project* ("the Contract"). The Contract related to a construction project on Notre Dame's campus, referred to as "Package Steam Boiler No. 6," under which English Boiler agreed to manufacture a boiler complete with the necessary auxiliary equipment ("Boiler No. 6") for Notre Dame (the "Project"). English Boiler purchased the Economizer from English Boiler's subcontractor, Applied Heat Recovery ("Applied Heat"). (Def's Ex. C, Dep. of John R. English, p. 30). The Economizer is "a heat recovery device designed to transfer heat from the products

of combustion to boiler feedwater." AM. BOILER MFR.'S HANDBOOK OF POWER, UTIL. AND BOILER TERMS AND PHRASES, 110 (PennWell Books 6th ed. 1992).

Boiler No. 6 was completed on or about July 12, 2007. (Def's Ex. D, Notre Dame's Answers to English Boiler's Second Set of Interrogs.). Startup of Boiler No. 6 commenced on or about July 12, 2007 and was completed on or about July 30, 2007. (Ex. D, No. 2.). Boiler No. 6 "was [first] fired for regular production of steam" on July 30, 2007." (Ex. D, No. 3; Def's Ex. E, Dep. of Mark L. Hummel 59, 63). Notre Dame made the final payment for English Boiler's work pursuant to the Contract on or about March 5, 2008. (Ex. E, 64).

Subparagraph 2(f) of the Contract states, in pertinent part, "the Work will be free from materials and workmanship defects and in conformance with the Contract Documents." (Def's Ex. B). Further, subparagraph (g) states, in pertinent part, that:

> The Contractor warrants to the Owner that the goods provided by the Contractor at the time of shipment will be free from material defects in material and workmanship and, that the goods will conform in all material respects to the Owner's specifications. *This warranty shall be ineffective and shall not extend to* goods subjected to misuse, neglect, accident or improper installation or maintenance, *goods which have been altered or repaired by anyone other than the Contractor or its authorized representative*. The warranty for boiler pressure parts shall be five (5) years from the date of final completion or five (5) years plus six (6) months after "first fire", whichever period ends first. The warranty contained herein is made only to and for the exclusive benefit of the Owner, and does not extend to any subsequent purchaser or user of the goods or of any product at which the goods may be a component part. THE ABOVE WARRANTY COMPRISES THE CONTRACTOR'S SOLE AND ENTIRE WARRANTY

OBLIGATION.

(Ex. A, ¶ 2(g)(emphasis added)).

On March 25 and April 26, 2010, Notre Dame alleged that members of its Utilities Department discovered three leaks in the tubes of Boiler No. 6. (Def's Ex. G, Notre Dame's Answers to English Boiler's First Interrogs., No. 2; Ex. E, p. 67-70). The Economizer's tubes are pressure parts. (Ex. C, p. 71). Centerline Mechanical Contracting, Inc. ("Centerline"), at Notre Dame's request, made repairs to the leaks on approximately March 28 and April 29, 2010. (Ex. G, No. 16l; Ex. E., p. 73-82). Since approximately April 26, 2010, Notre Dame has discovered no other leaks in the Economizer. (Ex. G, No. 15; Ex. E, p. 93-94). Since April 29, 2010, the Economizer has functioned as required by Notre Dame without any leaks or issues other than normal maintenance issues. (Ex. E, p. 93-94; Def's Ex. I, Dep. of John M. Koltick, Jr., P.E., pp. 59-60).

While repairing the Economizer, Notre Dame claims to have found other issues with it, including evidence of the casing being removed and patched back and numerous cobbled attempts to reassemble the Economizer casing to the structural framework with shims, lapped metal sheeting, and brackets. (Ex. G, No. 1). Notre Dame further claims that its employees saved sections of the Economizer's failed tube to analyze the welds. (Ex. G, No. 1). Upon further analysis, Notre Dame alleges that it discovered the

welds did not achieve complete penetration. (Ex. G, No. 1).

There are approximately 420 weld points in the Economizer. (Ex. E, pp. 124, 126; Ex. G, No. 1). Notre Dame engaged an outside firm, Calumet Testing Services, Inc., to x-ray sixteen randomly selected weld points on the Economizer. (Ex. G, No. 1). A document entitled Radiographic Examination Report, dated April 28, 2010, revealed that eleven of the sixteen welds failed the radiographic analysis. (Ex. J; Ex. E, p. 133; Ex. G, No. 1). Metallurgical analysis of the tube sections removed from the Economizer confirmed "non-optimal weld joint construction related to lack of fusion." (Koltick Rep., Ex. 1, p. 14). Even those welds that "passed" the radiographic testing may be defective. (Koltick Rep., Ex. 1, p. 15). English Boiler admits some welds failed. (Ex. 4).

Notre Dame contacted English Boiler after Notre Dame had already made repairs to the tubes and removed sections of them for analysis and after Notre Dame first contacted English Boiler's subcontractor, Applied Heat. (Ex. E, p. 74-75; Def's Exhibit K; Def's Exhibit L).

The Contract Documents required that all equipment furnished by English Boiler adhere to the then-latest edition of the ASME Boiler and Pressure Vessel Code ("ASME Code"). (Ex. 4, at #5-7). The ASME Code Section I requires welded joints in pressure vessels to be full penetration butt welds. (Ex. 1 at p. 10). To ensure a full penetration butt weld has occurred, an x-ray examination can

be performed. (Def's Ex. O, Dep. Sollish, p. 137). Nevertheless, ASME Code Section I did not require random radiographic x-rays of the welds on the Economizer. (Ex. I, pp. 35-36). The Contract did not require English Boiler to perform random radiographic x-rays on the Economizer's welds. (Ex. I, pp. 36-37; Ex. E, pp. 33-34).

David Sollish has been designated as an expert in this case by English Boiler to evaluate whether the Economizer complied with ASME Code Section 1. (Def's Exhibit P). Sollish stated, "[T]his component, in order to be code compliant, had to pass a visual test and a hydrostatic test, which it did." (Ex. O, pp. 172-174). Therefore, Sollish concluded that the Economizer complied with ASME Code Section 1. While Sollish agreed that only a radiographic x-ray can ensure a full penetration weld, that x-ray test is not required to be performed under ASME Code Section 1. (Ex. O, pp. 172-174).

English Boiler has provided a "Form P-3 Manufacturers Data Report," which indicates that the Economizer was fabricated by an authorized ASME boiler construction facility. (Ex. P, p. 5). Thomas Martin, an authorized inspector, certified that the Economizer was constructed in accordance with Section 1 of the ASME Code. (Ex. P, pp. 5-6).

Notre Dame's designated expert, John Koltick, also provided an expert report and testimony in this case. Koltick stated that, "based on the Calumet testing . . . they have shown that the

economizer, at least the joints that were tested, do not comply" with ASME Code Section 1. (Ex. 2, p. 59). Koltick's expert report discloses that, "[t]he long term effect of the Economizer's defective welds will be an increased risk for future leaks, materials fatigue, and ultimately, a shorter useful life than if it had been fabricated without the defects and in compliance with Section I of the 2004 ASME B&PVC." (Ex. 1, p. 19).

Notre Dame claims that its damages range from $255,000-$735,000 for the purchase and installation of a new economizer, labor associated with the installation of the new economizer, and the costs associated with renting a backup boiler while Boiler No. 6 is offline during the installation of the new economizer. (Ex. G, No. 8; Ex. M; Ex. N).

Notre Dame has brought its breach of contract claim against English Boiler, asserting English Boiler breached the Contract by supplying a non-compliant economizer; one that contained welds which did not meet ASME Code Section 1 standards. English Boiler has filed the instant motion for summary judgment asserting Notre Dame has failed to prove that English Boiler breached the Contract. English Boiler goes on to argue, that even if Notre Dame could prove that English Boiler breached the contract, Notre Dame is barred from asserting such a claim for three reasons. First, English Boiler argues Notre Dame's engagement of a third party - Centerline- to repair the tube leaks in Boiler No. 6's Economizer

rendered the Contract's warranty ineffective and bars Notre Dame's breach of contract claim. Second, English Boiler argues that the Contract's exclusive warranty expired in January 2013, such that even if leaks or other defects were present in the Economizer thereafter, English Boiler would not be obligated to repair or replace it. And third, English Boiler asserts that Notre Dame has suffered no actual damages and, instead, is seeking to recover for possible future damages.

> There is a Genuine Dispute as to Whether
> <u>English Boiler Materially Breached the Contract</u>

It is undisputed that Indiana law governs the Contract. In Indiana, "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)(citation omitted). Here, the parties agree there was a contract, but disagree whether English Boiler breached the Contract and whether the breach, if any, caused actual damages to Notre Dame.

There is a genuine dispute as to whether English Boiler breached the Contract by delivering an Economizer that included welds which were not full penetration butt welds. The Contract required English Boiler to provide products that complied with the ASME Code. Notre Dame's expert, Mr. Koltick opines that the Economizer provided by English Boiler had some welds that were not

full penetration butt welds, as required by the ASME Code. Thus, he concluded that English Boiler's "fabrication was not in compliance with Section I of the 2004 ASME B&PVC." (Koltick Report at 19). English Boiler's expert, David Sollish, reached an opposite conclusion, noting that the welds in the Economizer passed all necessary ASME Code testing, and thus complied with the ASME standards. English Boiler also points to the fact that Thomas Martin, an authorized inspector, certified that the Economizer was constructed in accordance with Section 1 of the ASME Code. However, at this stage, all this conflicting evidence establishes is a genuine dispute as to whether the welds in the Economizer met ASME standards, as required. Because of this, there is a genuine issue as to whether English Boiler breached the Contract.

And, the dispute as to whether the welds met ASME standards is material, which makes summary judgment inappropriate. *See Air Prods & Chemicals, Inc. v. Eaton Metal Prods. Co.*, No. 02-CV-1277 2003 WL 22133839 *6 (E.D. Pa. Aug. 22, 2003)(holding that evidence that fabrication procedures violated the ASME Code make summary judgment on the breach of contract issue inappropriate); see also *Frazier v. Mellowitz*, 804 N.E.2d (Ind. Ct. App. 2004)("[Whether a party has committed a material breach is a question of fact."). Indeed, whether a party's breach is material is a question of fact contingent on a number of factors:

> (a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably

anticipated;

>    (b) the extent to which the injured party may be adequately compensated in damages for lack of complete performance;
>
>    (c) the extent to which the party failing to perform has already partly performed or made preparations for performance;
>
>    (d) the greater or less hardship on the party failing to perform in terminating the contract;
>
>    (e) the willful, negligent or innocent behavior of the party failing to perform; and
>
>    (f) the greater or less uncertainty that the party failing to perform will perform for the remainder of the contract.

*Tomahawk Village Apts. v. Farren*, 571 N.E.2d 1286, 1293 (Ind. Ct. App. 1991)(quotation omitted). Whether such a breach is material is "generally a question of fact to be decided by the trier of fact." *Collins v. McKinley*, 871 N.E.2d 363, 375 (Ind. Ct. App. 2007). Thus, it will be the jury's role - not this Court's - to determine if the alleged breach in this case is material.

>    Because there is a genuine dispute whether English Boiler materially breached the contract at the time the Economizer was delivered, summary judgment regarding <u>Notre Dame's alleged subsequent breach is inappropriate.</u>

English Boiler asserts that Notre Dame's breach of contract action is barred because of Notre Dame did not give English Boiler prompt notice of the leaks and also because Notre Dame hired Centerline to complete repairs to the leaks on March 28 and April 29, 2010.

Paragraph 19 of the Contract set forth the obligations of the Owner, here Notre Dame:

> In the event the Owner becomes aware of any fault or defect of the Project, non-conformance with the Contract Documents, or of any errors, omissions or inconsistencies in the Drawings or Specifications, and in the further event that the Contractor does not have notice of the same, prompt notice thereof shall be given by the Owner to the Contractor.

English Boiler argues that Notre Dame failed to comply with Paragraph 19 of the Contract by not giving English Boiler timely notice of the leaks so that English Boiler may have had an opportunity to address them.

English Boiler also maintains that Notre Dame rendered the warranty contained in paragraph 2(g) of the Contract void by having Centerline perform repairs on the Economizer. However, as previously discussed, there is a genuine dispute to whether English Boiler materially breached the Contract by providing a non-conforming Economizer. If a jury finds that English Boiler materially breached the Contract, that breach occurred at the time of delivery, which predated either of Notre Dame's complained of actions.

In Indiana, "where a party is in material breach of a contract, he may not . . . seek to enforce the contract against the other party if that party later breaches the contract." *Wilson v. Lincoln Federal Sav. Bank*, 790 N.E.2d 1042, 1048 (Ind. Ct. App. 2003)(citation omitted). Thus, if a jury does find that English

Boiler materially breached the contact by delivering a non-ASME compliant Economizer to Notre Dame, any subsequent breach by Notre Dame would not negate Notre Dame's breach of contract claim. Because the answers to these disputed factual questions can only be answered by a jury, summary judgment is inappropriate.

Notre Dame's Breach of Contract Claim is not Untimely

English Boiler next asserts that Notre Dame's claim is untimely because the Contract's warranty has expired. According to English Boiler, "at the very latest, the warranty on pressure parts would have expired on January 30, 2013." English Boiler argues that, because the Economizer has functioned normally since April 29, 2010, Notre Dame cannot seek any damages that occurred or may occur after January 30, 2013.

The warranty in question is found in Paragraph 2(g) of the Contract, which states, "[t]he warranty for boiler pressure parts shall be five (5) years from the date of final completion or five (5) years plus six (6) months after 'first fire', whichever period ends first." Notre Dame experienced leaks in the Economizer in March and April 2010. Notre Dame then went on to have testing performed on the Economizer in April and May 2010. In June 2010, Notre Dame notified English Boiler of its concern with the Economizer and Notre Dame ultimately brought this lawsuit in July 2012. Notre Dame discovered the alleged materially defective welds

in the Economizer and notified English Boiler about them before January 30, 2013.

Thus, Notre Dame was timely in bringing the instant claim based on those materially defective welds found prior to January 30, 2013. Ind. Code § 26-1-2-725(2)(defining when a cause of action accrues and noting that "[a] breach of warranty occurs when tender of delivery is made").

What English Boiler really disputes is the extent of damages Notre Dame can recover. English Boiler argues that the warranty in Paragraph 2(g) should preclude Notre Dame from recovering for any damage outside of the five year period. In support of that proposition, English Boiler relies on *Red Rose Transit Authority v. Am. Bus Industries*, No. 11-1146, 2013 WL 180201 (Jan. 16, 2013 E.D. Pa.). In *Red Rose*, the plaintiff received a shipment of buses pursuant to a contract in May of 2003. Then, in June of 2009, a fire started in one of the bus's battery compartments. The plaintiff brought suit against the manufacturer alleging, among other things, breach of warranty. However, the court dismissed the breach of warranty claim, finding that express warranties had expired before the plaintiff noticed any defect and before the fire had taken place.

The logic in *Red Rose* is not applicable here. While the plaintiff in *Red Rose* did not assert a breach of warranty claim until after the contractual and statutory warranty periods had

expired, Notre Dame did bring its breach of warranty claim within the contractual warranty period. There is nothing in *Red Rose* to support that position that just because Notre Dame did not appreciate or sustain the full extent of its damages as of January 31, 2013, any subsequent damage claim would be time barred.

Notre Dame's Alleged Damages are not Speculative

English Boiler takes issue with Notre Dame's allegation that "the defects in the Boiler 6 economizer creates a risk of future failures that could result in future damage, loss or injuries." (Cmpt ¶ 14). English Boiler argues Notre Dame cannot seek damages based on unknown damages that Notre Dame may possibly suffer in the future.

The parties agree that the appropriate measure of damages is, "the amount that would put plaintiff in the same position it would have been in had the contract been fulfilled. Plaintiff may only recover the loss actually suffered and should not be placed in a better position than if defendant had not breached the contract." Ind. Model Civil Jury Instr. 3313. However, the parties disagree as to how to arrive at this measurement.

While it is true that no additional leaks have resulted in the Economizer since April 2010, that does not necessarily mean that Notre Dame has not have suffered any recoverable damages. Notre Dame's expert, Koltick, noted that the non-conforming welds in the

Economizer means that it suffers "an increased risk for future leaks, materials fatigue, and ultimately, a shorter useful life than if it had been fabricated without the defects." (Kotick Rep. p. 19). In fact, Notre Dame retained another expert, Todd Jacobs, who gathered cost information regarding the amount it would take to be in the position to have an economizer with conforming ASME welds. Todd Jacobs estimated that amount at $255,000.

English Boiler argues that to allow Notre Dame to use the Economizer for six and one-half years and now seek damages for an entirely new Economizer would be unfair. While that may be true, English Boiler can certainly contest the extent of Notre Dame's alleged actual damages. Regardless, Notre Dame has presented sufficient evidence that it has, in fact, suffered damages sufficient to proceed to trial. *Fowler,* 612 N.E.2d at 603; *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 659 (Ind. Ct. App. 2008)(noting that "estimates are permitted" in computing damages). Thus, while Notre Dame's damages may not be exact, they are not speculative either. As a result, summary judgment is inappropriate.

CONCLUSION

For the reasons set forth above, this motion is **DENIED**.

**DATED: August 29, 2014**          /s/RUDY LOZANO, Judge

United States District Court